OPINION
Defendant-appellant Jerry R. Francis, Jr. appeals his conviction and sentence from the Guernsey County Court of Common Pleas on four counts of rape in violation of R.C. 2907.02 and four counts of gross sexual imposition in violation of R.C. 2907.05.
 STATEMENT OF THE FACTS AND CASE
On May 14, 1997, the appellant/defendant, Jerry R. Francis, Jr., was indicted by the Guernsey County Grand Jury and charged with four counts of rape, each a violation of R.C. 2907.02, felonies of the first degree, and four counts of gross sexual imposition, each a violation of R.C. 2907.05, felonies of the third degree. The indictment accused defendant of committing acts of sexual abuse on his son (hereinafter "the victim"), from August, 1993, through February 20, 1997. He pled not guilty to the charges at his arraignment held on May 28, 1997. The matter was set for trial on September 9, 1997. On July 31, 1997, defendant filed a motion for a hearing to determine the competency of the victim pursuant to R.C. 2317.01 and Evid.R. 601(A). The motion requested that the defendant be permitted to hire and pay for an expert to determine competency of the child victim and that medical records relative to the victim be produced. The brief in support of said motion alleged that the child victim had been hospitalized for treatment of mental conditions which may render him incompetent to testify. The State filed a written motion objecting to the competency hearing contending that since the alleged child victim was now fourteen years of age, he was competent to testify under Evid.R. 601(A). The trial was continued at the request of the defendant. Thereafter, the parties agreed that Howard A. Beazel, Psy. D., Clinical Psychologist, be appointed as the court's own witness to conduct an examination and provide a report of the victim's competency to testify as a witness in the case. Specifically, the examination was to determine if the victim was of sound mind, capable of receiving just impressions of facts and relating them truthfully. On August 22, 1997, a written "waiver of right to speedy trial" signed by defendant and counsel was filed with the court. The waiver specifically noted that additional time was needed by defendant "[t]o fully evaluate requested psychological records for said [victim] in preparation for cross-examination of said child if [sic] found competent to testify." On December 23, 1997, Dr. Beazel filed a report with the court wherein he set forth his opinion that the child was competent to testify. After the competency hearing, held January 5, 1998, the court found the victim competent to testify. The trial judge set the trial for March 10, 1998. On January 7, 1998, defendant filed a jury demand. On March 6, 1998, defense counsel subpoenaed ten witnesses to testify at trial. On March 10, 1998, defendant filed a motion in limine asking the Court to exclude the testimony of state witness Cynthia L. King "because she is not an expert as defined in Evid.R. 702(C)." For some reason, not readily apparent from the record, the trial was continued to May 26, 1998. On March 20, 1998, a written waiver of right to trial by jury, signed by the defendant and his attorney, was filed. The trial was rescheduled to April 15, 1998. On April 15, 1998, defendant's trial to the court commenced. The state called four witnesses and the alleged child victim in its case-in-chief. The following facts were elicited at trial:
On February 20, 1997, Deborah Capp-Salupo, principal at Cambridge Junior High School, met with the victim, a seventh grade student, in a room next to his classroom to talk about an argument he had with another student. Salupo observed that he was "very agitated, angry." 1T.R. at 68. The victim told her that "there were things making him angry at home . . . [,] my dad makes me do things . . . to him . . ." when he was home alone with his dad. 1T.R. at 76. Principal Salupo decided to take the victim to the office of the guidance counselor, Julie Orsini.
Orsini then contacted Laura Harris, an intake assessment worker with Guernsey County Children's Services. Harris, in turn called police detective Bob Edwards and asked him to meet her outside of the school. Harris and Detective Edwards interviewed the child victim in Orsini's office. Harris interviewed the victim with Orsini and Detective Edwards present to find out what happened to the boy. Doctor Joseph Boca examined the victim in the emergency room at Southeastern Ohio Regional Medical Center. During the medical history the child victim, related that, usually, his father placed his penis in his rectum once or twice a month. 1 T.R. at 27.
Dr. Boca conducted a physical exam of Jerry. The doctor found that the sphincter muscle, the round muscle found in the anus, was much looser than would be expected in a child or a young adult. The doctor testified this was a result of repeated trauma. He also noted that the prostrate was very tender and inflamed. He observed "some older bruising" inside the rectal area. He testified that the condition described would be consistent with an outside object going inside the anal sphincter. Doctor Boca added that the victim's "physical condition [was] consistent with having been repeatedly anally penetrated . . . [because of the] . . . looseness of the muscle and by the bruising and by the prostrate being inflamed." 1T.R. 35. The doctor testified that he would expect such bruising as was found to dissipate in a couple of weeks to two to three months. 1T.R. at 31-32. The Doctor stated that he was of the opinion that the victim was a "victim of sexual abuse". Id.
The victim testified to numerous instances of sexual abuse perpetrated upon him by his father, beginning when he was "about eight or nine." 1T.R. at 124, 136. The sexual abuse continued until it ended "a couple of days" before the victim met with Ms. Salupo, his school principal, on February 20, 1997. 1T.R. at 143. The victim related instances where he would be forced to perform fellatio on the defendant. He told the trial judge that he would "jack-off' the defendant and that the defendant would "jack him off. . .". The victim testified that the defendant would put his penis in the victim's "rear end". 1T.R. at 128. On the witness stand, the victim stated this happened "four or five times." The victim described other acts of sexual abuse by his father. One such act consisted of the defendant placing a plastic bag on the bed. "He'd lay it out straight and everything and put baby oil on . . . the plastic and on him and on me . . . I'd get on top of it and he's get on top of my back and move back and forth." 1T.R. at 133-134. This was the act engaged in more than any other. "That was the normal like routine. We did that almost ever since, ever since we first did it we done it since then." 1T.R. at 134. The act would stop when the defendant would ejaculate "on the plastic underneath me." 1T.R. at 135.
The victim testified that when the defendant would ask him to do those acts, "I just did what I was told. . .[b]ecause I was scared. I didn't know if I said no to him what he would do to me." 1T.R. at 132, 157. The victim thought that if he did not comply, his father would hurt his mom or hurt him. 1T.R. at 165. He also testified that he had refused to participate in sexual acts with the defendant, but "[h]e'd tell me like he'll ground me or he'll threaten to kill my mom." 1T.R. at 143. Cynthia King, a licensed independent social worker was called as a witness by the State. She interviewed the victim and concluded that he displayed characteristics common to children who had been sexually abused. She testified that, although the victim denied recent anal penetration, time frames are difficult for children to establish and it was common for adolescent males to push an instance of sexual abuse, back to earlier periods of time, to a time when they were younger. 1 T.R. 90-91. The State then rested. 1 T.R. at 95. The defense chose to rest without presenting witnesses. On April 17, 1998, the trial court found the defendant guilty as charged. 2 T.R. at 125.
Judgment of conviction was entered accordingly. The defendant's sentencing hearing was scheduled for June 1, 1998. Defendant's bond was revoked. On April 24, 1998, defendant filed a notice of appeal. On June 1, 1998, the defendant was sentenced to nine years in the penitentiary on the first two counts of rape, to be served consecutively, and nine years on the third and fourth counts of rape to be served concurrently with counts one and two. 1T.R. at 279. The trial judge found "as to the Gross Sexual Imposition, Counts 5 and 6, 7 and 8, Counts 5 and 6 should be served consecutive to [his] 18 year sentence but concurrent with one another and concurrent with counts 5, 6, 7 and 8 for four year sentence for a total of 22 years of imprisonment together with $15,000.00 fine." 1T.R. at 279-280. The court's findings and sentence were journalized June 2, 1998. In its Judgment Entry of Sentence, the trial court ordered the defendant to "serve stated prison terms as follows: A) As to Counts 1-4, charging "RAPE": Nine (9) years of imprisonment as to each Count (totaling 36 years), of which 18 years is a mandatory prison term pursuant to Revised Code Section 2929.13(F).
Counts 1 and 2 will be served concurrently. Counts 3 and 4 will be served concurrently with each other, but consecutive to the 9 years to be served in counts 1 and 2, totaling 18 years.
B) As to Counts 5-8, charging "GROSS SEXUAL IMPOSITION": Four (4) years of imprisonment as to each Count (totaling 16 years), of which zero years is a mandatory prison term pursuant to Revised Code Section 2929.13(F).
Counts 5, 6, 7 and 8 will be served concurrently with each other, but consecutive to the 18 years to be served in the "RAPE" convictions above, for a total term of imprisonment in this case of 22 years.
1T.R. 279-280 (emphasis original).
The defendant was ordered into the custody of the County Sheriff and ordered transported to the Correctional Reception Center at Orient, Ohio, within the time prescribed by law. On June 11, 1998, the trial court issued a Nunc Pro Tunc Judgment Entry correcting the error contained in the June 2, 1997, Journal Entry so as to reflect the pronouncement of sentence at the sentencing hearing. The Nunc Pro Tunc Judgment Entry stated the following: The court finds that this court's Judgment Entry of Sentence filed in this case on June 2, 1998, should be AMENDED on page 6, at paragraph "1,(A)" of the Order to read as follows:
 1) The Defendant shall serve stated prison term as follows:
 A) As to Counts 1-4, charging "RAPE": Nine (9) years of imprisonment as to each Count ([sic] totaling 36 years, of which 18 years is mandatory prison term pursuant to Revised Code Section 2929.13(F).
 Count 2 shall be served consecutive to Count 1. Counts 3 and 4 shall be served concurrently with each other, and concurrently with the 18 years to be served in counts 1 and 2 — for a total of 18 years to be served on the "RAPE" convictions.
(Emphasis original) It is from the June 2, 1998, and June 11, 1998, (Nunc Pro Tunc) Judgment Entries that appellant prosecutes this appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 COUNSEL FOR DEFENDANT-APPELLANT COMMITTED EGREGIOUS ERRORS DURING THE TRIAL OF HIS CASE, AND THE CUMULATIVE EFFECT OF SUCH ERRORS VIOLATED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO, AND THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
ASSIGNMENT OF ERROR II
 IT WAS PLAIN ERROR TO ALLOW EXPERT OPINION TESTIMONY AS TO THE VERACITY OF THE ACCOUNT OR STATEMENTS OF [THE VICTIM].
ASSIGNMENT OF ERROR III
 THE FOUNDATION FOR CYNTHIA KING'S OPINION THAT [THE VICTIM] DISPLAYED CHARACTERISTICS CONSISTENT WITH A SEXUALLY ABUSED CHILD WAS HER BELIEF IN THE TRUTHFULNESS OF HIS STATEMENTS, AND HER TESTIMONY SHOULD NOT HAVE BEEN RECEIVED. THE ADMISSION OF THIS TESTIMONY WAS PLAIN ERROR.
ASSIGNMENT OF ERROR IV
 THE TRIAL COURT ERRED WHEN IT ALLOWED THE TESTIMONY OF PRINCIPAL DEBORAH CAPP-SALUPO INTO EVIDENCE UNDER EVID. R. 803(3).
ASSIGNMENT OF ERROR V
 THE APPELLANT'S CONVICTIONS OF RAPE EMBODIED IN COUNTS THREE AND FOUR OF THE INDICTMENT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND BASED ON INSUFFICIENT EVIDENCE IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW GUARANTEED HIM BY THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, MADE APPLICABLE TO THE STATES BY THE FOURTEENTH AMENDMENT, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.
ASSIGNMENT OF ERROR VI
 THE TRIAL COURT ERRED WHEN IT INCREASED APPELLANT'S LAWFUL SENTENCE AFTER HE HAS SERVED PART OF THE SENTENCE IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES MADE APPLICABLE TO THE STATES THROUGH THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLE 1, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.
ASSIGNMENT OF ERROR VII
 THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE APPELLANT WHEN IT MODIFIED THE SENTENCE JOURNALIZED JUNE 2, 1998 BY A NUNC PRO TUNC ENTRY JOURNALIZED JUNE 11, 1998 WITHOUT THE APPELLANT BEING PRESENT IN COURT.
We shall discuss assignments of error II and III out of order since an analysis of the issues in these assignments of error is preferable prior to the analysis of a portion of assignment of error I.
 II, III
The second assignment of error as set forth by appellant alleges that it was plain error to allow expert opinion as to the veracity of statements made by the victim, but the second assignment of error does not state whose testimony is at issue. For purposes of this assignment, we shall presume that appellant is referring to the testimony of both Dr. Joseph Boca and Cynthia King since these experts are the ones referred to by the appellant in his discussion of assignment of error I-B and I-C. We shall first discuss the testimony of Dr. Joseph Boca. Dr. Boca is an emergency medicine physician who examined the victim on February 20, 1997, the day after the victim disclosed his sexual abuse to school officials. Dr. Boca took a history from the child before doing a physical examination. Dr. Boca testified that he was trained "to not be leading the patients" and "to get [the patients] to express in their own words what had happened. . .". 1 T.R. at 25. Dr. Boca, on cross examination, further testified that, "[a]s part of our training we have them specifically state the people that were involved, if there were other people, rather than saying did your father or whatever we say I need to know exactly in your words who it was and we also do not state specific body parts. We have him state the exact body parts and the contact which is why it took a long time because he didn't want to say these." 1 T.R. at 40. Dr. Boca merely stated he used no leading or suggestive questions in his interview. This is an issue Dr. Boca could have been appropriately cross examined on even if not raised in the direct examination. We do not find that this testimony violated the holding of State v. Boston (1989), 46 Ohio St.3d 108 that an expert may not give an opinion of the veracity of a child's statements. Therefore, it was not error for the trial court to allow the testimony of Dr. Boca regarding the non-leading nature of his questioning of the victim while Dr. Boca was trying to gather a history from the child prior to the physical exam of the child for alleged sexual abuse. Assignment of error II as it regards the testimony of Cynthia King and assignment of error III which alleges that it was plain error for the trial court to admit Ms. King's opinion that the victim displayed characteristics associated with children who were sexually abused, shall be discussed together. Further, upon review of the record, we find that defense counsel objected sufficiently to preserve this issue for appeal. As such, we will review Ms. King's testimony under a harmless error standard. Ms. King, a Licensed Independent Socialworker, was called upon by the Guernsey County Department of Human Services solely for the purposes of a forensic investigatory interview of the victim. Ms. King testified that she looks for "[c]onsistencies, spontaneous corrections, reactions to specific material, and the extent of detail" when conducting this type of interview. 1 T.R. at 222. We find that Ms. King used these measures to assess the credibility of the victim's statements made to Ms. King. Ms. King even testified that the interview technique of asking a question several different ways during different parts of an interview (circular questioning) in order to assess the consistencies of answers, is a generally accepted interviewing technique used in all types of forensic interviews, not just when assessing child sexual abuse. 2 T.R. at 16. Ms. King also testified that she looked at the victim's attitude toward going home in "looking at the credibility issue." 2 T.R. at 88. In State v. Stowers (1998), 81 Ohio St.3d 260, the Supreme Court of Ohio found "[a]n expert witness's testimony that the behavior of an alleged child victim of sexual abuse is consistent with behavior observed in sexually abused children is admissible under the Ohio Rules of Evidence." Stowers, page 261. In Stowers, the Ohio Supreme Court specifically sets forth that an expert can explain that behaviors like recantation of accusations and delayed disclosure of incidents of sexual abuse are seen in children that have been sexually abused. Stowers, at 263. "Such testimony is permitted to counter balance the trier of fact's natural tendency to assess recantation and delayed disclosure as weighing against the believability and truthfulness of the witness." Stowers, at 263. While we agree that this area of the law is somewhat murky, perhaps a line from Boston, infra, helps to shine a bit of a light, even if only to be used case by case. "Most jurors would not be aware, in their every day experiences, of how sexually abused children might respond to abuse. Incest is prohibited in all or almost all cultures and the common experience of a juror may represent a less-than-adequate foundation for assessing whether a child has been sexually abused." Boston, infra, at 128. The guidelines then were originally set forth in Boston:
 1) An expert may not give an opinion as to the veracity of a child's statement,
 2) but there are times an expert may be able to impart specialized knowledge that would help the trier of fact assess a statement, i.e. recantation, delayed disclosure, explanation of why an abused child would still love the abuser, explanation of what is an age appropriate description. Providing specialized knowledge of child development or adolescence as it relates to the issue of sexual abuse is not the same as providing specialized knowledge of factors generally used to evaluate credibility.
From the trial court's discussion of these issues during the voir dire of Ms. King, we find the court was aware of the guidelines of Boston, infra, and attempted to follow them:
 THE COURT: Before we turn to the voir dire examination to determine the qualifications of the expert witness to testify and express an opinion in this case I believe it would be helpful to the Court to hear, as the Court is both the trier of fact and the finder of law in this case and is going to be asked to perform both of those functions shortly, I think it would be very helpful at this time if I hear exactly what the witness did in this case on which she intends to express her opinion and then I will permit the voir dire. For I am not certain and the discovery materials do not reflect exactly what was done. So if you could give me that please and once she has what she has done to base her opinion on in this case then I'll turn to voir dire examination by defense counsel.
* * *
 THE COURT: Mr. Plummer, you may inquire. This will be a portion of the foundation for the testimony. Continue, please.
1 T.R. at 224-225.
Following the conclusion of Ms. King's direct testimony, the trial court stated "[t]his is vore (sic) dire examination on cross examination of the qualifications and the underlying basis of the tendered expert opinion. You may continue." 2 T.R. at 8. During the voir dire of Ms. King, the testimony included her background and the various interview techniques used by her in assessing whether the child was a victim of sexual abuse. In order to qualify as an expert under Evid.R. 705, the expert "may testify in terms of opinion or inference and give his reasons therefore after disclosure of the underlying facts or data." Under Evid.R. 703 "the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Therefore, in Ms. King's testimony to the trial court, in his stead as a trier of the law, it was proper for her to state the underlying facts upon which her opinion was based. Ms. King testified her opinion was based upon the records supplied by the Guernsey County Children's Services Board, and her interview with the victim. 2 T.R. at 12. The thrust of appellant's argument is that Ms. King's opinion was based on her opinion that the victim was being truthful. Based upon the following exchange between the trial court and Ms. King, we find the trial court was cognizant of the inappropriateness of such a credibility based opinion and Ms. King understood that rule:
 THE COUNTY (SIC): All right. Thank you that's sufficient for what I needed to know. Also I need to know as a part of that testimony and expert opinion that you have been permitted to express have you ever concluded that a child was not truthful in allegations of sexual abuse, and expressed that opinion in any Court?
 A. In the court cases that I have testified in my professional opinion as an expert witness has been that the child has been sexually abused. However, I have submitted in written reports to the Court my professional opinion that a child has not been sexually abused.
 THE COURT: And you are generally aware of the rules of law that must guide the Court that testimony regarding sexual abuse of children is admissible providing the expert does not give an opinion as to whether the victim is being truthful or not, and whether she or he states the victim is a sexually abused child, but the expert may assist the trier of fact to understand the evidence, and of whether there is certain characteristics which frequently appear in child abuse victims. Do you understand that generally to be the perimeters of the opinion you may express.
A. Yes sir I do.
2 T.R. at 19-20.
After the extensive voir dire, the trial court specifically found Ms. King's testimony qualified under Evid.R. 701, 702(C) and 705. 2 T.R. at 37-39. Given the trial court's decision and admonishment to Ms. King that she could not testify as to the victim's credibility, we conclude it was not error to permit Ms. King to testify. During her "in chief" direct examination, Ms. King engaged in an extended discourse about the specific allegations of the crime. 2 T.R. at 42-53. This testimony was hearsay and did not qualify under an exception to the hearsay rule as a statement given for purposes of medical diagnosis or treatment. See, Evid.R. 803(4). Ms. King admitted she did not see the victim for diagnosis or treatment. 1 T.R. at 225. However, given the overwhelming evidence by the victim and Dr. Boca, including specific physical findings, we find this to be harmless error under Crim.R. 52(A). As stated previously, a teenage victim testified to the abuse and there was strong physical evidence of repeated sexual abuse presented by a medical doctor in support of the victim's claim of sexual abuse. The case did not turn solely on the testimony of Ms. King. The case sub judice was conducted before the bench, not a jury. As such, not only does the presumption that the court will consider only relevant testimony apply, State v. Post (1987),32 Ohio St.3d 380, 384, 513 N.E.2d 754 cert. denied (1988),484 U.S. 1079, 98 L.Ed.2d 1023, 108 S.Ct. 1061, reh'g denied (1988),484 U.S. 1016, 99 L.Ed.2d 19, 108 S.Ct. 1492, but the court in this case was vigilant and vocal on the record as to what evidence such experts could present and what evidence could not be considered. See 2 T.R. 19-20, 2 T.R. at 38. In conclusion, we find the confusion generated by the various types of testimony was the natural result of the fact that the trier of fact and law were one in the same. The trial court sub judice understood his role during voir dire and in fact invited some discourse which would have been inappropriate at a jury trial. The general thrust of these assignments of error is that an expert who is not a medical professional treating under Evid.R. 803(4) may not testify as to specifics of the victim's statements and may not testify as to the credibility of the victim. Reading the transcript as a whole, we find the trial court violated neither restriction. Assignments of Error II and III are denied.
 I
Appellant, in his first assignment of error, contends that he was denied effective assistance of counsel during the trial. The standard of review for a claim of ineffective counsel was established in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 and adopted by Ohio in State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases set forth a two-pronged analysis. The first prong of the analysis requires a showing that counsel's assistance was ineffective in that it fell below an objective standard of reasonable representation and violated essential duties to the client. The second prong requires a showing of actual prejudice by counsel's ineffectiveness such that but for the counsel's unprofessional error the outcome of the trial would have been different. A court may dispose of a case by considering the second prong first, if that would facilitate disposal of the case. Bradley, 42 Ohio St.3d at 143 (citing Strickland, 466 U.S. at 697.) Appellant cites four instances of conduct of defense counsel that are purported examples of ineffective counsel. Three of these claims involve the failure to object to testimony presented by State's witnesses. It must be noted that this case was tried before the bench. There is a presumption that a judge considers only the relevant information presented. State v. Post (1987), 32 Ohio St.3d 380, 384,513 N.E.2d 754, cert. denied, (1988), 484 U.S. 1079, 98 L.Ed.2d 1023,108 S.Ct. 1061, reh'ring den., (1988), 484 U.S. 1016,99 L.Ed.2d 719, 108 S.Ct. 1492. As the trier of fact, the court is presumed to know what evidence is admissible and relevant to rendering a verdict and what evidence is irrelevant. A Appellant's first cited instance of ineffective counsel concerns the testimony of Laura Harris. Laura Harris is a social worker with the Guernsey County Children's Services, who investigates reports of abuse and assesses the risk to children. While the court acknowledges that the testimony of Harris, may have been hearsay under State v. Chappell (1994), 97 Ohio App.3d 515, 528-535, 646 N.E.2d 1191, as in Chappell, this testimony was cumulative to the testimony presented by the victim and harmless. Where there is sufficient independent evidence of a defendant's guilt, which renders the admitted statement harmless, there is no prejudice and reversal is unwarranted. State v. Moritz (1980), 63 Ohio St.2d 150,407 N.E.2d 1268. As in Chappell, the alleged victim in this case, testified at trial and was subjected to full cross examination by defense counsel. Chappell, 97 Ohio App.3d at 534-535. The court finds that the admission of the statement of the social worker was harmless and not prejudicial. Since the issue may be disposed of under the second prong of the Strickland test, there is no need to consider whether the testimony of Ms. Harris was admissible or whether failure to object to such testimony was ineffective assistance of counsel. B C In appellant's second claimed instance of ineffective counsel, appellant argues that trial counsel should have objected to the testimony of Dr. Boca and Cynthia King, expert witnesses who purportedly provided opinions as to the truthfulness of the child victim. In appellants' third contention of ineffective assistance of counsel, appellant alleges that trial counsel should have objected to the testimony of Cynthia King, an expert witness who had interviewed the child victim and compared the child's characteristics to characteristics found in sexually abused children. In our discussion of the first portion of the second assignment of error, we found that the admission of Dr. Boca's testimony in toto was not error. Therefore, trial counsel did not fall below an objective standard of reasonable representation by failing to object to Dr. Boca's's testimony. In our discussion of the second part of the second assignment of error and of the third assignment of error, we found that defense counsel did object sufficiently to preserve for appeal the issue of error on the admittance of portions of Ms. King's testimony. Therefore, we find that our ruling on the second and third assignments of error is dispositive of the ineffective assistance of counsel claim also. Even if we were to find that counsel failed to preserve this issue for appeal, we have previously found that appellant was not prejudiced by the admittance of Ms. King's testimony. D Finally, appellant argues that trial counsel was ineffective because he failed to call witnesses for the defense. Judicial scrutiny of counsel's performance must be highly deferential. The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Strickland, supra, 466 U.S. at 689,104 S.Ct. at 2065, 80 L.Ed.2d at 694. A defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. State v. Brown (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523,539, cert. denied (1989), 489 U.S. 1040, 109 S.Ct. 1177,103 L.Ed.2d 239. Decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics. State v. Hunt (1984), 20 Ohio App.3d 310, 312, 20 OBR 411, 413,486 N.E.2d 108, 110; State v. Reese (1982), 8 Ohio App.3d 202, 203, 8 OBR 273, 274, 456 N.E.2d 1253, 1254. The decision whether or not to call witnesses is a trial tactic that will not support a claim of ineffective counsel. State v. Coulter (1992), 75 Ohio App.3d 219,230, 598 N.E.2d 1324. Further, appellant has not demonstrated that had his counsel presented the witnesses, including the testimony of the appellant, which he claims would have assisted his defense, the result of the trial would have been different. The court rejects appellant's argument that statements given by friends and family during the sentencing hearing demonstrate the witnesses would have aided appellant and that their testimony would have affected the outcome of the case. Such statements are generally self-serving and given without an opportunity for cross-examination by opposing counsel. For instance, appellant's wife, Leslie Francis, asked for leniency for appellant because Ms. Francis loved the appellant "with all [her] heart" and had loved him for seventeen years. (T. at 262) The friend of the family, which appellant's counsel refers to in his brief and who spoke at the sentencing hearing, related that she and her children lived with appellant's family for "months at a time" and she did not think it possible that appellant could have hurt a child during that time. (T. pg. 263) However, these statements were not under oath, nor subject to cross-examination, nor specific as to dates, and we find that those factors are fatal to appellant's argument that this friend's testimony at trial would have affected the outcome of the trial. In addition, the testimony of some of the witnesses, including the testimony of defendant, had the potential to be adverse to appellant's interests. Defense counsel would have been aware of the possible negative impact to his client and, therefore, defense counsel used reasonable trial strategy by not using these witnesses. For instance, defense counsel was put on notice that the victim's brothers, Chris and Shawn, and the victim's mother, Leslie Francis, were told about the sexual abuse by the victim long ago. This testimony, if elicited from defense witnesses, would not have helped in appellant's defense. During the trial, the record indicates no expressed desire of defendant to testify. Appellant's acquiescence in counsel's decision to not call defendant to the witness stand precludes his later assertion that his right to testify was violated. State v. Stevenson (Oct. 17, 1996), Cuyahoga App. No. 70137, unreported, 1996 WL 596452, at 7. The court rejects appellant's submission that appellant's claim that appellant's statement ". . .I'm not guilty of any of this. My son has falsely accused me", 1T.R. . 271, made during the sentencing hearing, shows that appellant wanted to testify fully and completely under oath, during the trial. Appellant acquiesced to counsel's decision to not place him on the stand during the trial and appellant's statement, while a denial of guilt, provides no indication of a disagreement with trial counsel's decisions during the trial. If a defendant makes no overt action which demonstrates to the trial court that the accused wishes to testify, defendant's right to testify is not violated. Stevenson, supra, at 7. We find that there was no overt action by the appellant/defendant to indicate a desire to testify at trial and that the decision as to whether to call a witness or witnesses is a trial tactic. Under the first prong of the Strickland test, we find that defense counsel's performance did not fall below the objective standard of reasonable representation nor violate essential duties to the appellant. In addition, we find nothing in the record that would lead us to conclude that the testimony of any of the witnesses referred to by appellant would probably have changed the outcome of the trial. Appellant contends that the cumulative effect of the errors discussed above violated his right to effective assistance of counsel. After a careful review and application of the second prong of the Strickland test, we find that appellant was not prejudiced by any of the errors of defense counsel, as described in the first assignment of error. Even the cumulative effect of any errors cannot be found to be prejudicial to appellant based on the offsetting and overwhelming strength of the admissible evidence. Appellant's first assignment of error is overruled.
 IV
In appellant's fourth assignment of error, appellant contends that admission of the testimony of the child victim's principal, Deborah Capp-Salupo, over the objection of trial counsel, constituted error. The test for determining whether the erroneous admission of evidence is harmless and non-constitutional error requires the reviewing court to look at the whole record, leaving out the disputed evidence, and then to decide whether there is other substantial evidence to support the guilty verdict. State v. David (1975), 44 Ohio App.2d 335, 347, 338 N.E.2d 793. If there is substantial evidence, the conviction should be affirmed. Id. As found in previous assignments of error, there is substantial evidence in the record, presented by Dr. Boca and the victim. The testimony of the Principal is cumulative. The court finds no need to decide whether the admission of Principal Capp-Salupo's testimony was error since, assuming arguendo that the admission of testimony was error, there was other substantial evidence to support the guilty verdict so that any error was harmless. Appellant's fourth assignment of error is overruled.
 V
Appellant's fifth assignment of error questions whether convictions of rape embodied in counts three and four of the indictment were against the manifest weight of the evidence and based on insufficient evidence. Appellant focuses on the bill of particulars filed by the State on July 10, 1997. The bill of particulars stated that the acts of rape, charged in counts three and four of the indictment, "were accomplished by the defendant, Jerry Francis, Jr., placing his erect penis into the anal cavity of his son [the victim] a male child . . . on dates certain between November 1, 1996, and February 20, 1997." (Emphasis added.) On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. See also, State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin,20 Ohio App.3d at 175. Under counts three and four of the indictment, defendant was charged with engaging in "sexual conduct with [the victim] not the spouse of the said Jerry R. Francis, Jr., and the said Jerry R. Francis, Jr. purposely compelling [the victim] to submit by force or threat of force, in violation of O.R.C. Section 2907.02
entitled `Rape'". Sexual conduct is defined to include anal intercourse between persons, regardless of sex. R.C. 2907.01(A) Dr. Boca testified to what the victim told Dr. Boca during the history gathering part of Dr. Boca's interview with the victim on February 20, 1997. Dr. Boca testified that the victim ". . . also stated his father had placed his penis into his son's rectum usually once or twice a month. . .[the victim] reported he had some lose [sic] stools and been sore inside his rectum especially for the last couple weeks and he had felt a lump inside." 1 T.R. at 27. Dr. Boca found bruising inside the rectal area that was between five days old and three months old. (November 1, 1996, was nearly four months prior to the exam on February 20, 1997.) Dr. Boca indicated the bruising was consistent with an outside object going inside the anal sphincter but inconsistent with something coming from internally to the outside from the child. 1 T.R. at 33. Dr. Boca also indicated it would be difficult for that bruising to be created by someone's finger. 1 T.R. at 54. Dr. Boca also found that the victim had an inflamed prostate which usually occurs only with repeated significant force to the prostate. 1 T.R. at 34 and 1 T.R. at 58. Dr. Boca also said that the object entering the child's anus would probably be longer than a finger based on the location of the prostate. 1 T.R. at 46 and 1 T.R. at 59. Dr. Boca found the victim's sphincter muscle to be "looser than I would expect from a child or a young adult." 1 T.R. at 30. Dr. Boca found the child's physical condition consistent with having been repeatedly anally penetrated by something wider than a finger. 1 T.R. at 35-39. There was sufficient, competent, credible evidence from Dr. Boca's testimony alone to conclude that at least two instances of rape occurred between November 1, 1996, and February 19, 1997. We find this evidence to be sufficient, competent and credible to establish proof beyond a reasonable doubt that anal intercourse occurred between November 1, 1996, and February 20, 1997, though the child victim testified that no anal intercourse occurred after the child was "about 11 or 12". 1T.R. 200. Therefore, we find that appellant's convictions on counts three and four of the indictment were based on sufficient evidence and were not against the manifest weight of the evidence. In addition, though not necessary for our conclusion above, Cynthia King, the expert witness on the characteristics of sexually abused children, had conducted an interview of the child victim on March 10, 1997. She testified that as children get older they feel they should be able to control the situation more and maybe should have fought back. The expert stated that it was consistent with a sexually abused teenager to "give history of sexual activity that was more removed from them than more recent ones." 2 T.R. at 91. Ms. King also testified that "male-to-male victimization is extremely difficult for teenage boys who are struggling with who I am. What's my sexual identity . . Does that mean I'm homosexual . . ." 2 T.R. at 91. While we found that the admission of portions of Ms. King's testimony to be error in regard to the specific details of the crime, we found that her expert testimony was admissible so long as it was based upon specialized knowledge that she had, as an expert, that was outside of the common knowledge of the trier of fact. Ms. King's explanation as to why the victim would testify in detail to the earlier incidents of sexual abuse but deny the more humiliating aspects of the most recent incidents of sexual abuse are admissible under Stowers. Therefore, there was an expert's explanation as to why the victim would testify in detail to the earlier incidents of sexual abuse but deny the more humiliating aspects of the most recent incidents of sexual abuse. As discussed above, we find that the convictions for rape under counts three and four of the indictment were not against the manifest weight of the evidence nor based upon insufficient evidence. We find that the specific allegations in the complaint and bill of particulars were proven beyond a reasonable doubt by sufficient competent, credible evidence. Appellant's fifth assignment of error is overruled.
 VI
Appellant contends that the trial court erred when it increased appellant's lawful sentence after he had served part of his sentence. We disagree. Appellant was sentenced in open court on June 1, 1998. 1T.R. at 233. When the sentence was pronounced, in court, appellant was sentenced to nine years on each of the four counts of rape, for a total of 36 years, and four years each on the four counts of gross sexual imposition, for a total of 16 years. 1T.R. at 278. The first two counts of rape, counts one and two of the indictment, were ordered to be served consecutively. The other two counts of rape, counts three and four of the indictment, were ordered to be served concurrently, for a total of 18 years. 1T.R. at 279. As to gross sexual imposition, counts 5 through 8 of the indictment, counts 5 and 6 were to be served consecutively to the 18 years imposed for the rape convictions but concurrent with one another and "concurrent with counts 5, 6, 7 and 8 for a four year sentence"[sic], totaling 22 years. 1T.R. at 280. A fine of $15,000.00 was imposed under the gross sexual imposition convictions. Id. Defendant was remanded into the custody of the Sheriff of the County. 1T.R. 283. The Judgment Entry of Sentence journalized June 2, 1998, ordered the appellant to serve rape counts one and two concurrently. Rape counts three and four were ordered to be served concurrently but consecutive to counts one and two, for a total of 18 years. Appellant was sentenced to four years of imprisonment for each of the four counts of gross sexual imposition, to be served concurrently with each other but consecutive to the 18 years on the rape charges for a total of 22 years. Thus, the June 2, 1998, Judgment Entry did not correspond with the pronouncement made to appellant in open court on June 1, 1998. Double jeopardy bars a trial court from modifying a sentence by increasing it after execution of that sentence has commenced. State v. Ballard (1991), 77 Ohio App.3d 595,597. However, Crim.R. 36 states "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." A nunc pro tunc entry may be used to correct a sentencing entry to reflect the sentences the trial court actually imposed on a defendant at the sentencing hearing and does not constitute an increase of the sentence. State v. Stevens (Aug. 2, 1995), Summit No. 16998, unreported, 1995 WL 464721; Dean v. Maxwell (1963), 174 Ohio St. 193, 187 N.E.2d 884. Appellant's constitutional right to be free from double jeopardy was not violated by the nunc pro tunc entry which merely corrects a judgment entry to correspond to the sentence imposed at the sentencing hearing. Appellant's sixth assignment of error is overruled.
 VII
Appellant submits that he should have been present when the trial court issued its nunc pro tunc entry, journalized on June 11, 1998. Appellant directs the court to Crim.R. 43(A) which provides that a defendant shall be present at the imposition of sentence. This rule has been held to apply to situations whereby a sentence is vacated and a new sentence imposed. City of Columbus v. Rowland (1981), 2 Ohio App.3d 144, 145, 440 N.E.2d 1365. Such is not the case when a nunc pro tunc entry is issued to correct an error in the journal entry to reflect the actual sentence imposed at the sentencing hearing. State v. Stevens, (Aug. 2, 1995), Summit No. 16998, unreported, 1995 WL 464721. The sentence in this case was not vacated. Appellant was present at the sentencing hearing in accordance with Crim.R. 43. The nunc pro tunc entry corrected the trial court's entry to reflect the sentence pronounced at that hearing. The court was not required to correct the entry in appellant's presence. State v. Stevens, supra. Appellant's seventh assignment of error is overruled.
The Judgment of the Guernsey County Court of Common Pleas is affirmed.
By EDWARDS, J. GWIN, P.J. and FARMER, J. concur.